## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ARLECIA RICHARDS, | **Case No.: 1:22-cv-01198** |
| Plaintiff, | |
| v. | **COMPLAINT AND** |
| | **DEMAND FOR JURY TRIAL** |
| USCB CORPORATION; EXPERIAN INFORMATION SOLUTIONS, INC.; and TRANS UNION LLC, | |
| | 1. **FCRA, 15 U.S.C. § 1681** *et seq.* |
| | 2. **FDCPA, 15 U.S.C. § 1692** *et seq.* |
| Defendants. | |

Plaintiff Arlecia Richards, ("Plaintiff") through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendant USCB Corporation ("USCB"), and Defendants Experian Information Solutions, Inc. ("Experian") and Trans Union LLC ("Trans Union") (referenced collectively as "CRA Defendants").

## I.  INTRODUCTION

1.      Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by CRA Defendants. Plaintiff contends the CRA Defendants failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

2.      Plaintiff's Complaint also alleges that CRA Defendants also violated 15 U.S.C. § 1681 *et seq.* by failing to reasonably investigate Plaintiff's consumer disputes, which each resulted in Defendants reporting inaccurate information about Plaintiff.

1

3.     Plaintiff's Complaint also arises from violations of the FCRA 15 U.S.C. § 1681 *et seq.*, against Defendant USCB for failing to conduct a reasonable reinvestigation after receiving notice of Plaintiff's dispute from Defendants Experian and Trans Union.

4.     Plaintiff's Complaint also arises from violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. §1692 et seq., which prohibits debt collectors from engaging in abusive, deceptive, and unfair collection practices.

## II.     JURISDICTION AND VENUE

5.     This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

6.     Venue in this District is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transact business within this District or are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## III.     PARTIES

7.     Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

8.     Plaintiff is a natural person who resides in Cook County, Illinois.

9.     Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

10.     Defendant USCB is a financial institution engaged in the business of collecting debt. USCB is also a "furnisher," as contemplated by 15 U.S.C. § 1681s-2. Upon information and belief, USCB is regularly engaged in the business of furnishing credit information to the consumer reporting agencies. USCB is headquartered at 761 Scranton Carbondale Hwy, Eynon, PA 18403-

1021. USCB can be served through its registered agent, ILLINOIS CORPORATION SERVICE C, located at 801 Adlai Stevenson Drive, Springfield, IL 62703.

11.     Defendant USCB regularly collects or attempts to collect debts owed or due or asserted to be owed or due another, and is therefore a "debt collector" within the meaning of the FDCPA, as defined at 15 U.S.C. §1692a(6). Defendant regularly uses the telephone and mail to engage in the business of collecting debts and/or alleged debts from consumers in several states, including Illinois.

12.     Defendant Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f)). On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

13.     Defendant Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f)). On information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Trans Union's principal place of business is located at 555 West Adams Street, Chicago, Illinois 60661.

14.     Defendants Experian and Trans Union regularly engage in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. The CRA Defendants regularly furnish consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and are therefore "consumer reporting agencies" as defined by 15 U.S.C. §1681a(f) of the FCRA.

15.     During all times pertinent to this Complaint, USCB and the CRA Defendants were authorized to conduct business in the State of Illinois and conducted business in the State of Illinois on a routine and systematic basis.

16.     During all times pertinent to this Complaint, USCB and the CRA Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

17.     Any violations by USCB and the CRA Defendants were not in good faith, were knowing, negligent, willful, and/or intentional.

18.     Neither USCB nor the CRA Defendants maintained procedures reasonably adapted to avoid any such violations.

### IV.     FACTUAL BACKGROUND

19.     Plaintiff incorporates by reference all of the above factual allegations of this Complaint as though fully set forth at length herein.

20.     The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

21.     Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

22.     The FCRA is intended to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

4

23.     Experian and Trans Union, two of the three major consumer reporting agencies (at times referred to collectively as "CRAs" and individually as a "CRA") in the United States, regularly publish and distribute credit information about Plaintiff and other consumers through the sale of consumer reports.

24.     The CRA Defendants regularly obtain consumer bankruptcy information to include in consumer reports.

25.     The CRA Defendants' consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

26.     The CRA Defendants obtain consumer information from various sources. Some consumer information is sent directly to the CRAs by furnishers, and other information is independently gathered by the CRAs from third party providers, vendors or repositories, like computerized reporting services like PACER and Lexis-Nexis.

27.     The CRA Defendants regularly seek out and procure public record information, including consumer bankruptcy filing and discharge information, with the intention of including this bankruptcy information on the consumer reports they sell to third parties such as lenders.

5

28.     The diligence the CRA Defendants exercise in uncovering and recording consumer bankruptcy filings is not replicated in their subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

29.     The CRA Defendants' unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681(e)(b).

30.     The CRA Defendants know the information they report about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in their own files.

31.     The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendants) to make lending decisions.

32.     Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and date of delinquencies contained in the CRA Defendants' consumer reports.

33.     The information Defendants include in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

34.     FICO Scores are calculated using information contained in the CRA Defendants' consumer reports.

35.     FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

36.     FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

    a.  "Payment history" refers to whether a consumer has paid her or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be. A collection account is highly damaging to credit scores.

    b.  The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

37.     Lenders also consider a consumer's debt-to-income ratio (DTI) before deciding to extend credit or approve financing terms.

38.     DTI compares the total amount a consumer owes to the total amount a consumer earns.

39.     A consumer's income, however, is not included in their consumer report; only their amount of debt is.

40.     The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit and favorable credit terms (e.g., higher interest and lower credit limits).

41. A consumer who has obtained a bankruptcy discharge and has an account reporting with outstanding or past due balances after the bankruptcy discharge suffers greater harm than if that account were accurately reporting with a zero-dollar balance, especially if that account is an open "collection" with a balance owed, as is the case here.

42. The CRAs (through their Consumer Data Industry Association) created, maintain, and license the industry guidelines to furnishers through the Credit Reporting Resource Guide® ("CRRG"), detailing how furnishers should report consumer data to the CRAs using the Metro 2 Format and codes.

43. The 2020 CRRG, page 10-1, states that "Accounts of consumers who have filed petitions for Bankruptcy (Third Party Collection Agencies) . . . **must be deleted**."

44. Thus, Defendant/s is/are aware that collections for debts which were included in a bankruptcy should be deleted from a consumer's credit report following the filing of a bankruptcy.

45. The CRA Defendants are well aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts, other than those that have been reaffirmed or successfully challenged in an adversary proceeding court, are discharged.

46. However, the CRA Defendants also know that pre-petition debts are rarely reaffirmed or successfully challenged in an adversary proceeding.

47. Further, the CRA Defendants know that if reaffirmation agreements or adversary proceedings (successful or not) exist, they will be explicitly identified on an individual consumer's bankruptcy docket sheet.

48. Additionally, information indicating whether a specific debt was reaffirmed or successfully challenged through an adversary proceeding (rather than discharged) can be easily

retrieved from the same sources from which the CRA Defendants independently obtain consumer bankruptcy case information.

49.     The CRA Defendants also receive information about account reaffirmations or other discharge exceptions directly from furnishers of account/tradeline information.

50.     Despite the availability of accurate consumer information, the CRA Defendants regularly report inaccurate information about accounts after consumers receive a Discharge Order.

51.     The CRA Defendants regularly publish consumer information that conflicts with information: provided by data furnishers to the CRA Defendants, already included in their credit files, contained in public records that they regularly access, or sourced through their independent and voluntary efforts.

52.     The CRA Defendants routinely report inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by § 1681(e)(b).

53.     Defendants know the information they report about consumers' bankruptcies is often inconsistent with public records, information provided by furnishers, and data contained in Defendants' own files.

54.     Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against the CRA Defendants for their inaccurate credit reporting following a Chapter 7 discharge.

55.     Thus, the CRA Defendants are on continued notice of their inadequate post-bankruptcy reporting procedures. More specifically, Defendants are on continued notice that their inadequate procedures regularly result in the reporting of inaccurate balances, account statuses, payment histories, and payment statuses.

*Allegations Specific to Credit Reporting of Plaintiff*

56.     Plaintiff filed a "no asset" Chapter 7 Bankruptcy on or about February 13, 2020, in the United States Bankruptcy Court for the Northern District of Illinois (Case No. 20-04070).

57.     Plaintiff received an Order of Discharge on or about June 1, 2020.

58.     Thereafter, Plaintiff was not personally liable for any of her dischargeable debts. Upon entry of Plaintiff's Discharge Order, all of Plaintiff's dischargeable debts had zero-dollar balances.

59.     The CRA Defendants obtained notice of Plaintiff's bankruptcy discharge through their routine, independent collection of consumer information from third party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by the CRAs in Plaintiff's consumer reports.

60.     The CRA Defendants prepared one or more consumer reports concerning Plaintiff after Plaintiff was discharged from Chapter 7 Bankruptcy.

61.     In the Public Records section of Plaintiff's consumer reports, both CRA Defendants included the bankruptcy case number, court, filing date, and the fact that Plaintiff's bankruptcy had been discharged.

62.     The CRA Defendants also reported Plaintiff's credit history in individual "tradelines," including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, statuses, and the dates of the last status update.

63.     The CRA Defendants are aware that they are generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through bankruptcy,"

and/or with a zero-dollar balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

64.     The CRA Defendants are also aware that in the case of a collection for a pre-petition debt, they should delete the account or not report it at all.

65.     The CRA Defendants should have reported **all** of Plaintiff's dischargeable, pre-petition debt as included in or discharged in Chapter 7 Bankruptcy, and with a zero-dollar balance, or if a collection, deleted the account.

66.     The CRA Defendants failed to report **all** of Plaintiff's dischargeable, pre-petition debts as included in or discharged in Chapter 7 bankruptcy with a zero-dollar balance.

### *Inaccuracies on Plaintiff's Trans Union Reports*

67.     On or about July 14, 2021, Plaintiff obtained her Trans Union consumer report and her credit score was 627.

68.     On July 17, 2021, Plaintiff received an alert through her credit monitoring service that her Trans Union score had dropped **33 points** to 594 due to a "New Account in Collection – USCB"

69.     Trans Union inaccurately inserted Plaintiff's USCB Corporation collection account, beginning with AS2003XXXX (the "Account") which had been discharged.

70.     Trans Union reported the Account as an open collection account with a Balance of $1,379.00 owed, and also reported the Account as "opened" on April 26, 2021.

71.     Trans Union reported that the Account's "Estimated month and year this item will be removed" as "12/2026." Pursuant to the FCRA, a collection account remains on a consumer report for seven (7) years after the Date of First Delinquency ("DFD") of the original debt.

Therefore, Trans Union reported that the DFD for the Account was in December 2019, which is prior to Plaintiff's filing of her Chapter 7.

72.     Thus, Trans Union had in its possession actual notice that the Account predated Plaintiff's bankruptcy, yet Trans Union allowed the Account to be inserted onto Plaintiff's consumer report a year *after* her bankruptcy was filed.

73.     The unsecured Account was discharged on or about June 1, 2020.  Therefore, the Account should not have been reported at all, in compliance with the CRRG industry standard.

74.     Despite reporting Plaintiff's bankruptcy in the Public Records section of Plaintiff's consumer report and indicating that other pre-bankruptcy accounts were "Discharged/Included in Bankruptcy Chapter 7" and carried zero-dollar balances, Trans Union failed to prevent the insertion of the pre-petition collection and instead reported it with an open balance owed.

75.     Trans Union is aware of the types of accounts that are generally discharged from bankruptcy under the default rule in Chapter 7 bankruptcy, and which types of accounts are generally exempted from discharge, such as government back loans (which this was not).

76.     The Account was not coded as the type of account that would generally be exempted from discharge.

77.     Notably, non-party Equifax did not report the Account at all, in compliance with the CRRG.

78.     On or about July 17th, 2021, Plaintiff disputed the inaccurate reporting of the Account with Trans Union.

79.     Upon information and belief, Trans Union received Plaintiff's dispute (Trans Union later updated the Account with a comment "Account information disputed by consumer").

80. Upon information and belief, Trans Union forwarded Plaintiff's disputes to USCB within 5 business days of receipt.

81. Upon information and belief, USCB received Plaintiff's dispute.

82. Trans Union failed to respond to Plaintiff's dispute. However, Plaintiff subsequently checked her Trans Union report and discovered that Trans Union continued to inaccurately report the Account with a balance of $1,379.00 and failed to indicate that the debt had been discharged in bankruptcy, or to delete the Account. The Account noted Plaintiff's dispute by stating "Account information disputed by consumer."

83. On September 18, 2021, Plaintiff received another alert from her credit monitoring service that her Trans Union score had dropped **57 points** to 550 due to a "New Account in Collection – USCB." Apparently, the Account had been removed and reinserted again.

84. Upon information and belief, Trans Union did not investigate Plaintiff's dispute, and pursuant to its unreasonable procedures, merely forwarded an automated dispute form to USCB, despite possessing independent information that indicated the Account was discharged and should have been deleted by Trans Union.

85. Trans Union blindly relied on the information provided by USCB even though it conflicted with information contained in Trans Union's records, contradicted other information Trans Union reported about Plaintiff, was in violation of the CRRG, and/or neglected Trans Union's knowledge regarding Plaintiff's bankruptcy and discharge

86. Trans Union knew, from its own CRRG guidelines, that Trans Union should not report a collection for discharged debt, even if the furnisher reported the information to Trans Union.

87.     However, even after Plaintiff's dispute, Trans Union continued to report the inaccurate collection Account.

88.     Trans Union's failure to report the Account accurately after receiving Plaintiff's dispute is particularly egregious because Trans Union knew the information it reported was factually inaccurate and conflicted with information contained in its own records and it was *also* notified by Plaintiff.

<u>*Inaccuracies on Plaintiff's Experian Reports*</u>

89.     In or around July 2021, Plaintiff also obtained her Experian consumer report.

90.     Defendant Experian reported the Account as "seriously passed due date" and "assigned to […] collection agency," with an outstanding balance and past due amount of $1,379.00. Experian reported the Account as "opened" on April 26, 2021. However, Experian knew that the Account predated Plaintiff's bankruptcy filing.

91.     Shortly thereafter Plaintiff disputed the inaccurate reporting of the Account with Experian.

92.     Experian responded to Plaintiff's dispute by failing to report the Account as discharged or changing the balance to zero. Experian stated: "The information you disputed has been verified as accurate; however, information unrelated to your dispute has been updated."

93.     Several weeks later, Plaintiff again disputed the inaccurate reporting of the Account with Experian.

94.     On or about August 10, 2021, Experian responded with a "Before" report showing the open collection with $1,379 balance and past due, and an "After" report reporting the Account as a collection discharged through Chapter 7 with a zero balance.

95.     Experian did not follow its own industry guidelines and delete the Account.

96.     The reporting of a collection is highly derogatory to credit scores, regardless of whether it is open, closed, or discharged.

97.     USCB failed to conduct a reasonable investigation after receiving notice of Plaintiff's dispute from Experian and Trans Union. USCB failed, among other things, to review (or intentionally ignored) all relevant information regarding the dispute.

98.     Consequently, USCB continued to furnish inaccurate data to the CRA Defendants despite possessing information from which USCB could have reported the Account accurately. USCB's failure to provide the Defendant CRAs with accurate Account information is particularly egregious as USCB was notified of the inaccurate information through Plaintiff's disputes.

99.     Further, USCB subscribes to the CRRG and is bound under contract with the CRAs to follow its guidelines. However, USCB failed to delete the Account in compliance with the CRRG.

100.    Upon information and belief, the only reason for USCB to report the debt to Plaintiff's consumer reports was to coerce Plaintiff to pay the discharged debt.

101.    USCB and the CRA Defendants inaccurately reported that Plaintiff owed a balance that Plaintiff did not actually owe, and also reported a collection account that they should not have reported at all.

102.    USCB and the CRA Defendants inaccurately reported the Account with a balance owed after the Account debt was discharged in Chapter 7 Bankruptcy and therefore had a zero-dollar balance.

103.    USCB and the CRA Defendants failed to delete the discharged collection Account from Plaintiff's consumer reports.

104. USCB and CRA Defendants' reporting of the Account is patently false/incorrect and therefore inaccurate.

105. If not patently false, USCB and CRA Defendants' reporting of the Account is materially misleading and therefore inaccurate.

106. The CRA Defendants received notice of their inaccurate reporting from their own reporting of Plaintiff's discharge and their knowledge that the Account debt predated the bankruptcy.

107. Plaintiff also specifically notified USCB and the CRA Defendants that the Account debt was discharged, but USCB and the CRA Defendants rejected this specific notice.

*USCB's FDCPA violations*

108. In Plaintiff's Chapter 7 petition, she listed the USCB Account on Schedule F as a "Nonpriority Unsecured Claim." The listing indicated the debt was incurred in September 2019.

109. According to the certificate of service filed in the Bankruptcy Court on February 16, 2020, the Bankruptcy Noticing Center emailed and texted actual notice of the bankruptcy case to Defendant USCB Corp. on February 15, 2020.

110. There were no objections to Plaintiff's discharge of the USCB Account.

111. On or about June 1, 2020, Plaintiff's Chapter 7 bankruptcy was discharged by Order of the Bankruptcy Court.

112. Plaintiff's bankruptcy discharge included the discharge of all debt owed on the Account.

113. In the Order of Discharge for Debtor and Notice sent by the Bankruptcy Noticing Center, among other things, there is a specific explanation of the discharge and a warning to creditors, which reads in pertinent part:

**Creditors cannot collect discharged debts**
This order means that no one may make any attempt to collect a discharged debt from the debtors personally. For example, creditors cannot sue, garnish wages, assert a deficiency, or otherwise try to collect from the debtors personally on discharged debts. Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally. Creditors who violate this order can be required to pay debtors damages and attorney's fees.

114. However, on or about December 30, 2021, almost two years after USCB was provided notice of Plaintiff's bankruptcy, USCB mailed Plaintiff a collection letter attempting to collect on the discharged debt.

115. In its "collection notice" to Plaintiff, USCB stated that Plaintiff owes "$1,379.00, and "[a]t this time your collection account with Ashworth College remains unpaid. Here's your chance to eliminate this debt and save money while doing it."

116. However, Plaintiff had already eliminated the debt on the Account.

117. USCB stated "[t]his offer can save you $275.80!" and that they were "not obligated to renew this offer." USCB offered to allow Plaintiff to pay them a discounted $1,103.20.

118. USCB also stated that the letter was "a communication from a debt collector" and that "this is an attempt to collect a debt, and any information will be used for that purpose."

119. USCB designed the communication as a bill (demand for payment), indicating to consumers like Plaintiff that an outstanding balance was owed and payment was due on the (discharged) debt. The "bill" had a section for Plaintiff to "Please detach and return this portion with your payment" and listed a website for Plaintiff to pay online.

120. The least sophisticated consumer would be misled by these representations, since USCB stated that $1,379.00 was past due from Plaintiff and made no mention of the bankruptcy discharge for which it had been notified. All of that implied the use of legal means to collect the debt.

121.    Upon information and belief, USCB included such language to make Plaintiff believe she was still legally responsible for the debt on the Account.

122.    USCB's collection notice was misleading when construed as a whole, as USCB demanded payment for a discharged debt, and prominently featured this payment demand, while also suggesting Plaintiff could "save money" by paying the debt.

123.    According to the certificate of service filed in the Bankruptcy Court, the Bankruptcy Noticing Center emailed actual notice of Plaintiff's bankruptcy discharge to USCB on June 2, 2020.

124.    Additionally, USCB fails to use reasonable efforts or otherwise acts in bad faith by failing to confirm debts are indeed valid, and not discharged by bankruptcy, when USCB is on notice that it regularly pursues consumers whose debts were discharged in bankruptcy.  USCB also fails to perform what is commonly known as a "bankruptcy scrub" to confirm consumers it pursues did not discharge the alleged debts in a bankruptcy proceeding.

125.    USCB further knew, or reasonably should have known, that the debt it was attempting to collect from Plaintiff had been discharged in Plaintiff's Bankruptcy since USCB had actual notice of Plaintiff's discharge.

126.    USCB knows or is otherwise on notice that some of the debts it attempts to collect are debts that have been discharged in bankruptcy.

127.    Upon information and belief, USCB does not attempt to determine whether the debts it is attempting to collect have been included in bankruptcy, even though USCB is on notice that many of the debts it attempts to collect have been discharged in bankruptcy.

128.    USCB's attempts to collect an alleged debt from Plaintiff were deceptive, misleading, unfair, unconscionable, and plainly violated numerous provisions of the FDCPA.

18

129.   USCB's conduct is precisely what Congress intended to deter and punish through enactment of the FDCPA.

130.   USCB's collection efforts caused Plaintiff to suffer concrete and particularized injuries and harm. USCB injured Plaintiff by invading Plaintiff's privacy, attempting to extract money from Plaintiff that she did not owe, diminishing Plaintiff's efforts to obtain a fresh start following her bankruptcy discharge, and placing Plaintiff in fear of legal proceedings or other avenues Defendant might pursue to collect the alleged debt.

131.   USCB continues to send Plaintiff collection letters.

132.   As a result of USCB's conduct, Plaintiff has sustained actual damages including, but not limited to, lost sleep, lost time, embarrassment, stress and anxiety, emotional and mental pain, and anguish.

*Plaintiff's Damages*

133.   Had Defendants reported the Account with a zero balance, Plaintiff's credit scores and DTI would have been better.

134.   Had Defendants deleted the Account in compliance with their industry standards, Plaintiff's scores and DTI would have been even better.

135.   Open collection accounts with balances are especially harmful to a consumer's FICO and other credit scores, especially after a bankruptcy discharge.

136.   FICO scores treat a single collection account as nearly as derogatory as a bankruptcy filing in terms of credit score loss.

137.   Upon information and belief, after Plaintiff's bankruptcy discharge, Plaintiff applied for credit with Synchrony Bank in August 2021, but was denied due to the inaccurate reporting of the Account by Defendants.

138.    Defendants' inaccurate reporting of the Account, along with additional information belonging to Plaintiff, was published to non-parties WebBank LLC, JPMorgan Chase Card Services, Commenity Bank, and Credit One Bank by Defendants.

139.    As a direct result of USCB and the CRA Defendants' inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

140.    Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, reputational harm, stress, headaches, anger, frustration, shock, embarrassment, violation of Plaintiff's privacy, anxiety, and sleepless nights.

141.    Defendants' conduct exacerbated Plaintiff's frustration during the already stressful post-bankruptcy period by hindering Plaintiff's ability to rebuild Plaintiff's credit.

### COUNT I
### Experian and Trans Union
### Violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681e(b), 1681(i)

142.    Plaintiff incorporates by reference all of the above factual allegations of this Complaint as though fully set forth herein at length.

143.    The FCRA requires CRAs, like Defendants, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

144.    In this case, the CRA Defendants negligently and willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of Plaintiff's credit information after Plaintiff received a Discharge Order.

145.    The CRA Defendants independently sought information about Plaintiff's bankruptcy filing and discharge and voluntarily reported it in Plaintiff's consumer reports.

146.     When the CRA Defendants procured and published Plaintiff's bankruptcy information, they had an obligation to ensure they followed reasonable procedures to report the bankruptcy discharge and its effect(s) with maximal accuracy.

147.     These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and evidenced in prior cases involving the CRA Defendants from which they are on notice of their unreasonable procedures concerning the reporting of discharged debts.

148.     The CRA Defendants knew or should have known that the effect of a discharge Order in a no asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

149.     The CRA Defendants knew or should have known of their obligations under the FCRA, especially pertaining to reporting discharged debt with a zero-dollar balance.

150.     Additionally, the CRA Defendants possess or could easily obtain substantial written materials that detail CRAs' duties and obligations under the FCRA, including those that apply when a consumer files for Chapter 7 Bankruptcy.

151.     The CRA Defendants know that discharged debts should not be reported as late, past due, or with outstanding balances after the discharge date, and should be reported with a zero-dollar balance.

152.     Further, Defendants' own industry guidelines in the CRRG state that collections for debts included in bankruptcy should be "deleted" from consumer reports.

153.    Yet the CRA Defendants inaccurately reported Plaintiff's Account debt, which predated Plaintiff's Chapter 7 Bankruptcy, with statuses other than "discharged in bankruptcy" and balances greater than zero.

154.    Defendants should have deleted the collection Account from Plaintiff's consumer report, in compliance with the CRRG.

155.    Despite knowledge of these legal obligations, the CRA Defendants willfully and consciously breached their duties under the FCRA. Accordingly, the CRA Defendants deprived Plaintiff of Plaintiff's rights under the FCRA.

156.    The CRA Defendants had actual knowledge of Plaintiff's bankruptcy and Discharge Order, as evidenced by the information they published in Plaintiff's consumer reports, including the bankruptcy case number, court, date of filing and date of discharge.

157.    Individual furnishers of account information also notified the CRA Defendants of Plaintiff's bankruptcy, as evidenced by tradelines in Plaintiff's consumer reports that are labeled "discharged in bankruptcy" with zero-dollar balances.

158.    Yet in this case, the CRA Defendants reported the Account debt, which predated Plaintiff's bankruptcy, with a balance owed after Plaintiff's discharge (instead of a zero-dollar balance).

159.    The CRA Defendants violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file and consumer reports, and by also failing to report accurate information when the CRAs knew or should have known the information they were reporting is inaccurate, or otherwise contradicted by information known by the CRAs, reported to the CRAs, or reasonably available to Defendants.

160.    Even after Plaintiff notified the CRA Defendants of the inaccurate information they included in Plaintiff's credit file, the CRA Defendants continued to inaccurately report the Account with an outstanding balance.

161.    The CRA Defendants' inaccurate reporting was particularly egregious because they have the ability to independently confirm that the Account was discharged by reviewing their own records or accessing readily available public records.

162.    The CRA Defendants therefore further failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by unreasonably relying on the furnisher, where, as here, the CRA Defendants possessed the information confirming that the Account was discharged, including information concerning continued payments, and/or specific notice from Plaintiff.

163.    The CRA Defendants also failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by failing to verify that the Account was discharged following Plaintiff's dispute, which information is reasonably available from the same sources the CRA Defendants procure consumer bankruptcy information.

164.    The CRA Defendants' violations of 15 U.S.C. § 1681e(b) were willful.

165.    Alternatively, the CRA Defendants' violations of 15 U.S.C. § 1681e(b) were negligent.

166.    When a consumer disputes the accuracy or completion of information included in a CRA's credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information **or** delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

167.     When conducting its reinvestigation of disputed information in a consumer report, the consumer reporting agency is required to "review and consider all relevant information submitted by the consumer."

168.     Additionally, the CRA must notify the person who furnished the disputed information of the consumer's dispute within five business days of its receipt. When notifying the furnisher of the consumer's dispute, the CRA is to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

169.     Thus, in addition to violating the FCRA by failing to follow reasonable procedures as 15 U.S.C. § 1681e(b) requires, the CRA Defendants also violated the FCRA by failing to perform a reasonable reinvestigation of the disputed Account even after Plaintiff notified them of the inaccurate information in Plaintiff's credit file.

170.     Experian's and Trans Union's violations of 15 U.S.C. § 1681i include, but are not limited to the following:

(a)     Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.

(b)     Failing to consider all relevant information while investigating Plaintiff's dispute.

(c)     Failing to include all relevant information when notifying USCB of Plaintiff's dispute.

(d)     Failing to comply with their own CRRG industry standards and delete the Account.

171.     Instead of reasonably reinvestigating Plaintiff's dispute, Trans Union did not respond to Plaintiff's dispute and continued to report the discharged Account with an outstanding balance after Plaintiff's bankruptcy discharge.

172.    Instead of reasonably reinvestigating Plaintiff's dispute, Experian responded by indicating that it had verified the accuracy of the Account's reporting, and continuing to report the Account with an outstanding balance.

173.    The CRA Defendants' inaccurate reporting damaged Plaintiff's creditworthiness.

174.    Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by the CRA Defendants inaccurately reporting a balance for a debt that was discharged in bankruptcy, and otherwise failing to report that the debt was discharged in bankruptcy or failing to delete the Account, in compliance with the CRRG.

175.    Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

176.    The CRA Defendants are direct and proximate causes of Plaintiff's damages.

177.    The CRA Defendants are substantial factors in Plaintiff's damages.

178.    The CRA Defendants' acts, as described above, were done willfully and knowingly; or, alternatively were committed negligently.

179.    Therefore, the CRA Defendants are individually liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

### COUNT II
**USCB**
**Violations of the FCRA, 15 U.S.C. § 1681s-2(b)**

180.    Plaintiff incorporates by reference all the above factual allegations of this Complaint as though fully stated herein.

25

181.    The FCRA requires furnishers of information like USCB to conduct an investigation with respect to disputed information, review all relevant information, and report the results of the investigation to the consumer reporting agency. If the investigation reveals the information is incomplete or inaccurate, it must report those results to all consumer reporting agencies to which the furnisher has provided the inaccurate information.

182.    USCB knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, promulgated by the Federal Trade Commission, and evidenced by case law. USCB obtained or had available substantial written materials that apprised it of its duties under the FCRA. Despite knowing these legal obligations, USCB acted consciously in breaching its known duties and deprived Plaintiff of her rights under the FCRA.

183.    Plaintiff disputed the USCB tradeline through two of the three national CRAs: Experian and Trans Union.

184.    Thereafter, the Defendant CRAs forwarded Plaintiff's disputes to USCB, notifying USCB that Plaintiff was disputing the information it had furnished about the Account.

185.    USCB received notice of Plaintiff's dispute and failed to reasonably investigate or otherwise take corrective measures despite possessing all relevant knowledge regarding the dispute.

186.    USCB continues to furnish inaccurate information about Plaintiff to both Defendant CRAs, even though USCB possesses all relevant information about the Account and the inaccuracy that Plaintiff disputed.

187.    The inaccurate USCB Account materially and adversely affects Plaintiff's credit standing.

26

188.    On at least one occasion within the past two years, by example only and without limitations, Defendant USCB violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes to Experian and Trans Union.

189.    USCB violated sections 15 U.S.C. §§ 1681n and 1681o of the FCRA by engaging in willful and negligent noncompliance of 15 U.S.C. § 1681s-2(a), (b), and engaging in conduct that violates 15 U.S.C. § 1681s-2(a), (b), including:

(a) Willfully and negligently failing to conduct an investigation of Plaintiff's dispute, despite possessing knowledge, information, and records to substantiate Plaintiff's dispute;

(b) Willfully and negligently failing to review all relevant information concerning Plaintiff's dispute;

(c) Willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

(d) Willfully and negligently failing to report to the CRAs that the disputed information is indeed inaccurate;

(e) Willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all consumer reporting agencies concerning the inaccurate information disputed by Plaintiff;

(f) Willfully and negligently continuing to furnish and disseminate inaccurate credit, account and other information concerning the Plaintiff to the consumer reporting agencies despite actual knowledge of the falsity of the reported information; and

(g) Willfully and negligently failing to comply with the requirements for furnishers of information enumerated in 15 U.S.C. § 1681s-2(b).

(h) Willfully and negligently failing to comply with the CRRG industry standard and delete the Account.

190.    USCB unreasonably refused to take corrective measures required by the FCRA to correct and/or update Plaintiff's consumer information furnished to the national consumer reporting agencies.

191.    USCB is a direct and proximate cause, as well as substantial factor in causing damage and harm to Plaintiff.

192.    Consequently, USCB is liable to Plaintiff for the full amount of statutory, actual and punitive damages, as described herein and as allowable by law. Additionally, Plaintiff is entitled to Plaintiff's attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. § 1681n and § 1681o.

**COUNT III**
**USCB**
**Violations of the FDCPA, 15 U.S.C. § 1692e(2)(A); § 1692e(5); § 1692f**

193.    Plaintiff incorporates by reference all of the above factual allegations of this Complaint as though fully stated herein.

194.    The FDCPA is a comprehensive regulatory scheme that Congress enacted to eliminate abusive, deceptive, and unfair debt collection practices by debt collectors and to promote consistent state action to protect consumers against debt collection abuses. 15 U.S.C. §§ 1692(a), (e).

195.    When Congress enacted the FDCPA in 1977, Congress had found that abusive debt collection practices harmed consumers by, among other things, increasing personal bankruptcy, marital instability, loss of employment, and invasion of privacy.

196.    USCB's collection notice to Plaintiff was deliberately coercive and contained statements that the least sophisticated consumer would interpret as consequences in the event of non-payment of the debt.  USCB's primary purpose of the communication to Plaintiff was to unlawfully extract money from Plaintiff.

197.    USCB used the mail to pursue an uncollectible debt against Plaintiff.

198.    Upon information and belief, USCB utilizes these false, deceptive, misleading, unfair, and unconscionable tactics as a matter of course when attempting to collect debts from consumers such as Plaintiff, despite the fact that USCB knew or should have known that the debt was discharged, and thus did not have a right to churn out a form collection letter as if it didn't know.

199.    Consumers like Plaintiff are left with the impression that there will be consequences unless they pay Defendant the amount demanded by USCB. USCB therefore violates 15 U.S.C. § 1692e(5) by threatening action that cannot legally be taken against Plaintiff for the alleged debt, including obtaining any "verification" that the alleged debt is valid or a copy of any judgment.

200.    In this case, Plaintiff did not owe the debt USCB attempted to collect because that debt was discharged in bankruptcy.

201.    USCB's conduct is intentional. USCB does not maintain procedures reasonably adapted to avoid such conduct, but rather intends the conduct.

202.    USCB violated § 1692e(2)(A) of the FDCPA by misrepresenting the legal status of the alleged debt that USCB attempted to collect from Plaintiff. USCB's representations were made knowingly and with the intent to deceive and coerce the least sophisticated consumer. 15 U.S.C. 1692e(2)(A).

203.    USCB further violated § 1692e of the FDCPA by misrepresenting the consequence of non-payment of the alleged debt to Plaintiff.

204.    USCB's acts as described above were done intentionally with the purpose of coercing Plaintiff to pay an alleged debt.

205.    USCB's debt collection actions, including sending a collection notice and calling Plaintiff, were false, deceptive, or misleading representations or means used by USCB in connection with the collection of a debt.

206.    Defendant further violated the FDCPA by using unfair or unconscionable means to collect a debt.

207.    Defendant's unfair and unconscionable means include, without limitation:

   (a) Attempting to collect a debt from Plaintiff that was discharged in bankruptcy, and was therefore not due and owing or legally collectible;

   (b) Misleading Plaintiff as to the validity of the debt;

   (c) Misleading Plaintiff as to the consequence of failing to dispute the debt;

   (d) Misleading Plaintiff as to the consequence of disputing the debt;

   (e) Threatening to send Plaintiff a copy of a "verification" or "judgment;"

   (f) Attempting to coerce, pressure and/or deceive Plaintiff into paying money that Plaintiff did not in fact owe.

208.    Defendant's actions were false, deceptive, or misleading representations or means used in connection with the collection of a debt.

209.    As a result of the foregoing violations of the FDCPA, Plaintiff suffered injuries in fact, including but not limited to emotional distress, embarrassment, frustration, lost sleep, and

interference with usual activities. USCB is liable to Plaintiff for actual damages, statutory damages, costs, and attorney fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendants for the following:

(a)     Declaratory judgment that USCB violated the FCRA, 15 U.S.C. § 1681s-2(b);

(b)     An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c)     An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d)     An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2),

(e)     Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2);

(f)     Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

(g)     Injunctive relief prohibiting the Defendant's continued abusive debt-collection conduct in violation of the FDCPA;

(h)     Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2);

(i)     Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

(j)     Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 7th day of February 2022.

**PRICE LAW GROUP, APC**

By: */s/Dawn M. McCraw*
Dawn M. McCraw (AZ #035321)
8245 N. 85th Way
Scottsdale, AZ 85258
T: (818) 600-5585
E: dawn@pricelawgroup.com

Syed H. Hussain (IL #6331378)
440 N. McClurg Court #803
Chicago, IL 60611
T: 818-600-5535
E: syed@pricelawgroup.com
*Attorneys for Plaintiff*
*Arlecia Richards*